RICHARD JOHNSON *v.* RICHARD W. HAYS.

L. contracted with H. to deliver to him, on the 24th of January, 258 hogs, with the privilege of increasing the number to 300, L. agreeing to take them back into his possession and keep them till the 1st of October following, and then re-deliver them to H.; the lightest of the hogs to weigh not less than 140 lbs. gross. H. bound himself to pay L. $4.25 per cwt. for the hogs, as follows: $300 on delivery, $200 on the 15th of March thereafter, $200 more in the spring or summer, as L. needed it, and the balance on the return of the hogs by L. to H., in October. On the 24th of January, L. delivered the hogs, 288 in number, to H., and afterwards took them back into his keeping under the provisions of the contract; and H. at the same time paid L. $300 and subsequently, in different payments, $600 more. In July, L., without the consent of H., and against his directions, sold and delivered the hogs to J. for $850, with notice of the purchase by H. Held:

That the property in the hogs passed to H. by the sale and delivery on the 24th of January.

That L., in taking the hogs back into his possession, to keep till October, became *a bailee of the property.*

That the provision for the delivery and transfer of the property was not illegal, or against public policy, but a proper precaution for the safety of the vendee, and not irreconcilable with a rational interpretation of the other provisions of the contract.

That the privilege of increasing the number of hogs to 300, extended only to the time of the delivery, on the 24th of January.

That the provision, that the lightest of the hogs should weigh at least 140 lbs., was a mere guaranty as to the weight.

That the provision, that the hogs were to be weighed in October, was merely the mode of ascertaining the full amount to be paid by H.

PETITION in error to reverse the judgment of the District Court of Madison county.

The original suit was brought by Hays against Johnson in the common pleas of Madison county, for the recovery of the value of two hundred stock hogs, alleged to be worth nine hundred dollars, which Hays charged belonged to him, but which had wrongfully come into the possession of Johnson, who, on demand, refused to give the same up. The defendant Johnson, by his answer, claimed the property in the hogs, by an alleged valid purchase of the same from one John Lewis. Judgment was rendered in the common pleas for Johnson, which, on petition in error, was reversed by the district court; and Johnson now seeks to reverse the judgment of reversal.

On the trial in the common pleas, the plaintiff Hays, to maintain the issue on his part, and prove his title to the hogs, gave in evidence a written contract between himself and one John Lewis, as follows, to wit:

"An article of agreement, made and entered into this 22d day of January, A. D. 1853, by and between John Lewis of the one part, and R. W. Hays of the other part, witnesseth : The said John Lewis agrees and binds himself, to sell and deliver to the said Hays, on the 24th day of January, 1853, two hundred and fifty-eight hogs, with the privilege of increasing the number to three hundred. And the said Lewis binds himself to take the hogs into his possession, and keep, and re-deliver to the said Hays, the said hogs, on the first day of next October, the lightest of said hogs not to weigh less than 140 lbs. gross. The said hogs are to be neat, spayed, and trimmed, with the exception of four or five sows ; said hogs to be weighed at Fitzgerald's. And the said Hays agrees and binds himself to pay the said Lewis the sum of

four dollars and twenty-five cents gross weight for said hogs, as follows : Three hundred dollars on the first delivery ; two hundred dollars on the 15th day of March, next ; and two hundred dollars more in the spring, or summer, as the said Lewis may need it : said Lewis to pay the said Hays interest on the money advanced ; the balance of the purchase money to be paid on the first day of October, at the second delivery of said hogs. As witness our hands this day and year above written."

The plaintiff further gave evidence tending to prove that the hogs mentioned in said contract, were in the possession of said Lewis at the time said contract was made ; that in pursuance of said contract, and the delivery and re-delivery therein mentioned, the said Lewis, at the time in said contract mentioned, drove said hogs into another corn field, and counted them, (the plaintiff and said Lewis not agreeing as to the number, but the plaintiff agreed to take them at said Lewis'·count, to wit, 288,) and then delivered them to the plaintiff; that the plaintiff thereupon delivered the said hogs back to said Lewis, to be kept by him as in said contract mentioned, until the 1st day of October then next, according to the terms of said contract ; that the plaintiff paid said Lewis at the time said contract was made, the sum of $300, and subsequently the further sum of $400, and that he bought pasture and corn for said hogs to the amount of about $200, and charged the same to said Lewis with his consent, making an aggregate of payments of about $900. The plaintiff further gave evidence tending to prove that said Lewis, in June, 1852, applied to the plaintiff for permission to sell about thirty of the smallest of said hogs, and that such permission was given, and a sale made accordingly. The plaintiff further gave evidence tending to prove that said Lewis, without the knowledge or consent of the plaintiff, and against his directions, in the month of July, 1853, and after the facts above mentioned had occurred, sold the residue of said hogs to the defendant for the sum of $850, and converted the proceeds of said sale to his own use ; and also that the defendant, when he bought the hogs, had a knowledge of the plaintiff's rights in relation thereto. Upon this state of facts the defendant by his counsel asked the court to instruct the jury

that, according to the terms of said contract, the title to said hogs did not vest, and could not vest, in the plaintiff, until it was ascertained what portion of them weighed 140 lbs. at the time said hogs were to be re-delivered to the plaintiff, on the first day of October, 1853. That the plaintiff would then have a right, and be bound to take only such of said hogs as should weigh 140 lbs. gross weight, and therefore the ownership could not pass to the plaintiff until said weighing. The counsel for the plaintiff objected to the instruction asked for by the defendant, and insisted that the title to the hogs vested in the plaintiff at the time they were delivered to him as aforesaid by said Lewis; that the provisions in said contract as to the weight of said hogs, amounted to a warranty that the hogs should, at the time specified, weigh each not less than 140 lbs. gross weight; and that the weighing was only a mode of ascertaining the amount to be paid; and that whether the title to said hogs had passed to the plaintiff, was a question of intention between the parties; and that whether such intention had existed, was a matter of fact to be determined by the jury from the evidence in the case. And the court thereupon instructed the jury in accordance with the views of the counsel for the defendant, and directed the jury to return a verdict for the defendant. Thereupon the plaintiff by his counsel, excepted to said instruction and directions to the jury.

*Z. T. Fisher,* and *John W. Andrews,* for plaintiff in error.

*Mr. Fisher* cited Story on Sales, secs. 232, 313, 422; 2 Black. Com. 443; Moore's L. Gram. 338; *McDonald* v. *Hewet,* 15 Johns. Rep. 349; *Hallet* v. *Wylie,* 3 Johns. Rep. 44; *Jackson ex dem. Ludlow et al.* v. *Myers,* Ib. 388; Ib. 424; 5 Johns. Rep. 74; *Jackson ex dem. Livingston* v. *Kisselback,* 10 Johns. Rep. 336; *Scott* v. *Wells,* 6 Watts & Serg. 367; Long on Sales, 267–275; *Bush et al.* v. *Davis,* 2 Maule & Selw. 397; *Shipley* v. *Davis,* 5 Taunt. Rep. 621; *Rugg et al.* v. *Minett,* 11 East 210.

*Swayne & Baber,* and *R. A. Harrison,* for defendant in error, made the following points:

1. The facts show that it was the intention of the parties that the title to the hogs should vest in Hays when they were counted and delivered to him. It did so vest. The weighing to be done at the time of the second delivery, was merely to ascertain the amount to be paid. In all such cases, the title passes at the time of the contract and delivery. Hays chose thus to secure himself for the large amounts he was to pay, according to contract, before the weighing and final delivery of the hogs. There was nothing illegal in such an agreement. If it were the intention of the parties that the title should pass at the time the seller counted and delivered the hogs, the law will uphold and give effect to that intention. Hilliard on Sales, secs. 4, 5, 10, 14, 17; 6 Watts & Serg. 357; 13 Pick. 182; 20 Pick. 280; 2 Comstock 258; 11 Humphrey 207.

2. Lewis was estopped by matter *in pais* from denying that the title to the hogs was in Hays. Johnson could buy of Lewis no better right than he himself possessed. 1 Greenlf. Ev., sec. 207; 8 Wend. 483; 23 Wend. 230; 5 Denio 158.

3. The provision in the contract as to the weight of the hogs on the first of October, was a guaranty and warranty that the hogs should then each weigh not less than one hundred and forty pounds gross weight. This provision no more affects the question of title than the same agreement with another person would.

4. The common pleas erred in taking the case from the jury, and directing them to find a verdict for the defendant. There was evidence before the jury upon which they should have been allowed to pass. For this, if for no other reason, it was proper to reverse the judgment of the common pleas. 13 Johns. Rep. 294; 1 Selden 41; 2 Gill 150; 20 Vermont (15 Shep.) 624; 2 Grattan 333; 17 Howard 85, 184, 185, 186, 196.

*John W. Andrews*, in reply, made the following points:

1. The title to the hogs did not vest in Hays at what counsel call the first delivery. The weighing of the property on the first of October, the exclusion of all hogs under 140 lbs. gross weight and the payment for the hogs according to weight, all remained to be done by the parties, before a perfect and full delivery thereof

could be made. The law, upon grounds of public policy and right, requires these acts to be consummated, before the vesting of the title, under a contract of this character. Story on Sales, secs. 296, 297, 298 ; *Hanson* v. *Meyer*, 6 East 614 ; *Howe* v. *Palmer*, 3 Barn. & Ald. 321 ; Long on Sales, 265. A mere formal, technical delivery, such as this " first delivery" was, cannot change or evade a well settled rule of law.

2. The provision that the lightest of the hogs should weigh not less than 140 lbs. gross, is not merely a guaranty. Such a construction is inconsistent with other parts of the contract. When the vendor retains possession of goods, as in this case, the construction of the contract is against the vendee as a matter of public policy. *Hornbeck* v. *Vanmetre*, 9 Ohio Rep. 153.

BARTLEY, J. It appears that on the 22d day of January, 1853, Hays, the defendant in error, entered into a written contract with one John Lewis, whereby Lewis bound himself to sell and deliver to Hays, on the 24th day of the same month, 258 hogs, with the privilege of increasing the number to 300, Lewis agreeing to take them back into his possession, and keep them till the first of October following, and then re-deliver them to Hays ; the lightest of the hogs not to weigh less than 140 lbs. gross. And Hays bound himself to pay Lewis $4.25 per cwt. for the hogs, as follows : $300 on delivery, $200 on the 15th of March thereafter, $200 more in spring or summer, as Lewis needed it, and the balance to be paid on the return of the hogs by Lewis to Hays, in October. On the 24th of January, 1853, Lewis delivered the hogs, being 288 in number, to Hays, and afterwards took them into his keeping under the provisions of the contract; and Hays, at the same time, paid Lewis $300, and subsequently, in different payments, $600 more. In July of that year, Lewis, without the consent of Hays, and contrary to his directions, sold and delivered the hogs to Johnson, the plaintiff in error, for $850, with notice of the purchase by Hays.

This contract must be so construed as to carry out the manifest intention of the parties, apparent from the language, context and subject matter of the instrument, and the interpretation or

DECEMBER TERM, 1855. 107

Medina County Mut. Fire Ins. Co. v. Bollmeyer's Adm'r et al.

understanding of the parties, to be gathered from their acts. Giving full effect to each of the provisions of the contract, the property in the hogs passed to Hays by the sale and delivery on the 24th day of January; and Lewis, in taking the hogs back into his possession to keep till October, became the *bailee of the property*. This provision for the delivery and transfer of the property was not illegal, or against public policy, but a proper precaution for the safety of the vendee, and not irreconcilable with a rational interpretation of the other provisions of the contract—the privilege of increasing the number of hogs to 300, extending only to the time of the delivery on the 24th of January; the stipulation that the lightest of the hogs should weigh at least 140 lbs. being a mere guaranty as to the weight; and the provision that the hogs were to be weighed in October, and Lewis to be entitled to $4.25 per cwt., being the mere mode of ascertaining the full amount to be paid by Hays, making it thereby the interest of Lewis to keep the hogs well, and to return the whole number.

Judgment of the district court affirmed, and cause remanded to the common pleas for further proceedings.

SWAN, J., having formerly been of counsel, did not sit in this case.