Peck, J.
Numerous errors are assigned by the counsel for complainants in review, some of which have not been called to the attention of the court in the argument, and the result towhich we have arrived renders an examination and decision of a portion of those which have been discussed, unnecessary.
It is claimed in substance, that the court below erred in finding that the complainants in review were, in equity, trustees of the creditors of the firm of W. H. & S. A. Sigler, as to that portion of the joint assets, purchased by them of said firm, and paid for by the individual liabilities of said W. H. Sigler to Jacob Sigler and James McLaughlin, amounting to $1,230.94; and in decreeing a recovery out of said fund, against the now complainants as such trustees, for the principal, interest and costs, of the judgment recovered by said Knox County Rank against said firm.
It appears from the record, that on the 12th day of May, A. D. 1851, ¥m. H. Sigler & S. A. Sigler, were, and for a long time previous had been, partners in trade in Wyandot county, and had then on hand, and in their exclusive possession and control, as stock in trade, property and goods amounting, when invoiced at their full value, to the sum of $3,230.94. That W. H. Sigler, one of said partners, was then indebted, on his private account, to Jacob Sigler, his father, for money loaned, in the sum of $830.94, and to James McLaughlin in the sum of $400, besides interest, for which the said Jacob was his surety; and that the firm of *515 W. H. & S. A. Sigler were also indebted to Avery, Hilliard & Co. in tbe sum of $1000, for wbicb tbe said Jacob was also liable as surety; and to tbe Wayne County Bank in tbe amount, as was tben supposed, of $1000, for wbicb tbe said Jacob Sigler and Jobn N. Ricbey were also liable as sureties for tbe firm. It also appears from tbe record, that tbe firm of W. H. & S. A. Sigler were tben insolvent in tbe popular sense — i. e. tbey bad not sufficient assets to pay their liabilities; tbougb to what extent does not appear. Tbe goods, so invoiced, constituted tbeir entire stock in trade and tangible property ; but wbetber or no tbey bad casb assets and credits, resulting from tbeir previous joint operations, is not stated, and it is bigbly probable tbey bad; indeed, it could bardly, in tbe nature of things, bave been otherwise.
Under these circumstances, tbe firm of W. H. & S. A. Sigler, both partners assenting thereto, on tbe 12th of May, 1851, sold and delivered tbe entire stock of goods to tbe said Jacob Sigler and John N. Ricbey, at tbe invoice price of $8,230.94, wbicb is admitted to bave been tbeir full value, and tbe same, by agreement of said partners, was paid "for by tbe discharge of tbe separate liability of W. H. Sigler to Jacob Sigler of $830.94, and tbe assumption of tbe said Jacob Sigler and John N. Ricbey, to pay tbe liabilities of tbe firm to Avery, Hilliard & Co., and to tbe Wayne County Bank, amounting to $2,000, and tbe separate debt of W. H. Sigler to James McLaughlin, of $400, as evidenced by their bond of that date to said firm.
It is clear that there was no actual fraud on tbe part of Jacob Sigler and John N. Ricbey, or either of them, in tbe purchase of tbe goods. Tbeir answers, responsive to tbe bill, expressly deny it, and there is no evidence to establish it. Tbe circumstances clearly show that tbeir only object was, as tbey aver, to secure themselves for tbeir liabilities. Tbey deny that tbey knew at tbe time that tbe firm of W. H. & S. A. Sigler was insolvent; but it is clear that tbey were apprehensive of it, and desired security. *516 They were not mere volunteers, purchasing the goods of an insolvent firm with a knowledge of its insolvency, from which a presumption of fraudulent purpose, of more or less force, might be raised; but were sureties of the firm for $2,000, and creditors of one of the partners for $1,230.94; and they, as diligent and bona fide creditors, had the undoubted right to secure themselves, even if they knew that the firm was hopelessly insolvent. Their object does not seem to have been to defraud others, but to secure themselves. And the partners, though in failing circumstances, no act of bankruptcy nor commission of insolvency having intervened, had the undoubted right to secure those who had befriended them, to the extent, at least, of the joint obligation.
These general principles are not, I believe, denied by the respondent, nor is it denied but that, in ordinary cases, the partners all assenting thereto, a valid appropriation may be made of the joint assets to the separate debt of one of the firm.
The creditors of a partnership, merely as general creditors, have no lien on the joint assets of the firm. 5 Ohio St. Rep. 101, 516; 11 Ohio Rep. 394.
The right to have the joint assets applied to the joint liabilities, to the exclusion of the separate creditors, is the personal right of the partners themselves, and does not pertain to the joint creditors who have not acquired, by previous levy or seizure, a lien on the joint effects; and any right which they may have to such application, must, it is said, be worked out through this equity of the partners.
And it would seem to follow from the facts — that the creditors have no such lien, and that their claim, if any, must be based upon this right of the partner — that if the other partners should acquiesce in and agree to such appropriation to the separate creditor, the joint creditor could not thereafter object. And so are the authorities. “When the primary right of partners to apply the partnership, property to the extinguishment of the partnership *517 debts is gone, the right of the partnership creditors to enforce the application of the property of the firm to the payment of their debts, is also extinguished.” Miller, Assignee v. Estill et al., 5 Ohio St. Rep. 508; see, also, Wilcox & Welch v. Kellogg et al., 11 Ohio Rep. 394; Rice v. Barnard et al., 20 Verm. 479.
But it is claimed that this right of appropriation of the joint assets to the separate creditor by consent of the other co-partners, so as to conclude the joint creditors, can only be exercised while the firm is actually solvent and carrying on its joint operations, and that if the firm is insolvent merely, that is, not possessed of assets sufficient to liquidate its liabilities, such appropriation is void, as against the general creditors- of the firm, as being in fraud of their rights.
It must be conceded that there are general expressions to be found in some elementary treatises and some authorities which seem to sustain this position. These decisions and elementary deductions, attach undue weight and importance to the position of the joint creditor; and while they admit that the partners, if in the undisturbed possession and control of the joint assets, may, by mutual consent, appropriate them to a separate creditor, and that the joint creditor has not, as such, any lien on the joint assets, and that whatever right he may have to a priority over the separate creditor, must be attained through the right of the partners themselves to insist upon such appropriation, and of course dependent upon it, with a strange inconsistency, seem to treat the firm creditor as having a lien, irrespective of the rights of the co-partners, and regardless of their acts and concessions. They denominate it a “ quasi lien,” and deny to such co-partnership, if it happen to be merely insolvent in the popular sense, any power thus to appropriate their assets — a power necessarily involved in complete dominion and control over the joint property - — holding such an appropriation under such circumstances, necessarily, and without regard to the objects and motives *518 of the parties, an act of bad faith and a violation of the substantial rights of the joint creditor.
But the weight of authority, and the reason of the rule is, we think, decidedly, that mere insolvency, as commonly understood, no fraud in fact intervening, will not deprive the partners of their legal control over the property, and their right to sell and dispose of it as to them shall seem just and proper.
We have already seen that the co-partners, while they retain the possession and control of the joint assets, may, if they mutually agree thereto,.dispose of or apply the same to a separate creditor of one of the firm; and that, in so doing, if they act in good faith, they violate no right, legal or equitable, of the joint creditors, who have no lien, and must work out their equities through the co-partners. It therefore results in a mere question of power in the partners, to dispose of and appropriate their joint assets. Now, if at any time while the goods are in their possession and apparent control, it should so happen that, owing to the intervention of losses in the joint operations, an account stated of the affairs of the firm would show that their assets were insufficient to liquidate the joint liabilities, can it justly or properly be said, that the possession and legal control of the partners have ipso facto terminated ? Whenever an act of bankruptcy has been committed, or a commission of insolvency has issued against the firm, the partners, immediately, and by force of the statute, are divested of all power in, and control over, the joint assets ; they can no longer make any valid sale or appropriation of the joint property, which is to be thereafter marshaled on the ordinary rules in equity, where no specific appropriation has been made. There is good reason, then, for holding, that in such case, the appropriation would be void, because they have no longer any power over the goods. But, in our opinion, it would never do to adopt a rule so uncertain, as that the power of the partners over the joint property is to cease, whenever it can be shown *519 that their assets, for the time being, are insufficient to discharge their liabilities. Such a rule would be productive of much inconvenience, injustice and- uncertainty. The true rule should be, that the power of partners thus to act ceases upon the issuing of a commission of insolvency, but not from a mere inability at the1 time to pay their debts.
“ The simple fact that men may be insolvent in the popular sense of the word, does not deprive them of the power of selling their property by bona fide sales.” 9 Ind. Rep. 344; 5 Blackf. Rep. 395.
The case cited by the counsel for respondent in 12 N. H. 458, and many other cases also referred to by them, are cases arising upon distribution under assignments in trust; and in all such cases, there is no doubt but that the rule in equity requires that, in the distribution of funds belonging to the partnership, the joint creditors are entitled to priority over separate creditors of the several partners; and such would doubtless be the rule in the case at bar, if the court had now the control of a fund belonging to the firm, and were called on to distribute it. Here, however., there is no fund in possession of the court to be distributed, and .there is no express trust, the effect of which is to be declared; but the counsel for respondent insist that the creditors of the firm, under the circumstances of the sale and transfer, were entitled to the assets to the exclusion of the separate creditors; and that Jacob Sigler and John N. Richey, by their purchase, became and were trustees of the joint creditors to the extent of the sum appropriated to the individual liabilities of W. H. Sigler. How was this trust created? Not by contract, certainly. The sale to Richey and Sigler was absolute and unqualified in its terms; the agreed price has all been paid to the entire satisfaction of the partners; they received the goods as their absolute property, and have so treated and disposed of them. We have already seen that there is no actual fraud in the sale and purchase. They bought from those who had, at the time, the dominion and control, and right *520 of disposition, if they saw fit, to the separate creditors. The only person, the other partner, who had the right to object, having consented to the appropriation, it is difficult to see how such a transaction can raise a trust, either, express or implied, in favor of creditors, who, under repeated decisions in Ohio, have no lien on, or right to, the property, except such as is derived from and dependent upon the right of the co-partners themselves.
"We hold, then, that upon the case made by the record, the court of common pleas of Enox county erred in finding that the complainants in review were trustees for the creditors of "W. H. & S. A. Sigler, and in decreeing a recovery against them as such trustees, in favor of the Enox County Bank.
The conclusion to which we have come renders an examination of the other errors assigned, unnecessary.
The decree of the Enox county court of common pleas must be reversed, with costs.
Swan, C. J., and Bbinkerhoee, Scott and Sutliff, JJ., concurred.